IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JERRY OSBORNE,

                Plaintiff,

v.                                             CV 09-0198 MV/GBW

WILLIE MARQUEZ, STEVE MARTINEZ,
MIKE HEREDIA, and STEVE RICHARDS,

                Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Defendants' Willie Marquez, Steve Martinez, Mike Heredia, and Steve Richards *Martinez* Report filed August 27, 2009, (*Doc. 17*) and Defendants' Motion to Dismiss (*Doc. 18*), filed on November 9, 2009. Plaintiff Jerry Osborne was given until September 28, 2009, to respond to the *Martinez* Report, however, he has failed to do so.[1] *See Doc. 16.* The Motion and Report will be construed as a motion for summary judgment. This case was referred to me on June 3, 2009, to submit proposed findings of fact and recommendation for the disposition of the case pursuant to 28 U.S.C. §636(b)(1). *Doc. 9.* Having considered the pleadings and the relevant law, the Court recommends that Mr. Osborne's Complaint be dismissed without prejudice.

---

[1] Mr. Osborne also failed to file a Response to Defendant's Motion to Dismiss (*Doc. 18*), which would have been due on November 30, 2009.

## BACKGROUND

Mr. Osborne, a former prisoner[2] who is proceeding *pro se* and *in forma pauperis*, filed this civil rights action brought under 42 U.S.C. § 1983 on February 27, 2009. *Doc. 1.* Specifically, Mr. Osborne alleges that on January 15, 2009, he was assigned to the Custom Project Department of Corrections Industries Division (CID), where he suffered harm to his "left #1 index finger and the left index #2" finger. *Id.* at 2. Mr. Osborne claims that he cut his finger while working on a table saw because the blade did not have a protective shroud on it. *Id.* According to Mr. Osborne, Defendants Marquez, Martinez, Heredia, and Richards[3] showed deliberate indifference to unsafe working conditions at CID by not rectifying the conditions that caused Mr. Osborne's injuries. *See id.* at 3. Mr. Osborne asserts this was a violation of his Fourteenth Amendment Constitutional Due Process rights and his Eighth Amendment right to be free from cruel and unusual punishment. *Id.* Mr. Osborne is seeking declaratory and injunctive relief, as well as compensatory damages in the amount of $4,200,000.00[4] against each Defendant, and punitive damages in the amount

---

[2] Mr. Osborne was incarcerated at Southern New Mexico Correctional Facility ("SNMCF"), where the alleged incidents took place, when he initiated this suit on February 27, 2009. *Doc. 1.* However, on July 1, 2009, Mr. Osborne was released and now resides in Atlanta, Texas. *See Doc. 14.*

[3] Mr. Osborne's complaint originally also named "Prison Industries," which Defense Counsel has requested be referred to as "Corrections Industries Division" as that is its proper reference (*Doc. 15* at 1), and Joe Williams as Defendants. However, those Defendants were dismissed *sua sponte* by Judge Vasquez on May 15, 2009. *See Doc. 5*.

[4] Mr. Osborne's Complaint lists this number as "$4,2000,000." *Doc. 1* at 5.

of $50,000.00 against each Defendant. *Id.* at 5.

Defendants have filed an Answer, a *Martinez* Report, and a Motion to Dismiss denying the Complaint's allegations and raising several affirmative defenses, including failure to state a claim pursuant to the Federal Rules of Civil Procedure, Rule 12(b)(6), qualified immunity and failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a). *See Docs. 15, 17 & 18*.

For the reasons stated herein, the Court agrees with Defendants that Mr. Osborne has failed to exhaust his administrative remedies, and thus his Complaint should be dismissed without prejudice.

**STANDARD OF REVIEW**

*I.     Consideration of Martinez Report and Motion to Dismiss*

In Defendants' *Martinez* Report (*Doc. 17*) and Motion to Dismiss (*Doc. 18*), Defendants seek dismissal of Mr. Osborne's claims pursuant to FED. R. CIV. P. 12(b)(6) and assert the affirmative defense of failure to exhaust available administrative remedies based on materials submitted within the *Martinez* Report.  Because the Report and Motion require consideration of factual material outside the pleadings, the Court recommends that the Defendants' Motion to Dismiss be treated as one for summary judgment. *See* FED. R. CIV. P. 12(b) (if matters outside the pleadings are submitted to, and not excluded by the court, on a motion to dismiss for failure to state a claim upon which relief can be granted

3

pursuant to FED. R. CIV. P. 12(b)(6), the motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *See also Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003) ("If the defendant files a motion to dismiss requiring consideration of additional factual material, the court should convert the motion to one for summary judgment and ensure that the prisoner is given proper notification of the conversion."). In this regard, the Court notes that in the initial order directing submission of a *Martinez* Report (*Doc. 16*), the parties were advised, pursuant to *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991), that their submissions could be used in deciding whether to grant summary judgment. Additionally, Mr. Osborne, who is proceeding *pro se*, was afforded an opportunity to respond to the *Martinez* Report and to present conflicting evidence to controvert the facts set forth therein.

*II.     Summary Judgment*

Summary judgment is proper if the movant demonstrates that there is "no genuine issue as to any material fact" and that he is "entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). Only disputes over facts that might affect the outcome of the suit under the applicable law will preclude summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

"A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent

standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the non-moving party must "identify specific facts that show the existence of a genuine issue of material fact," *Munoz v. St. Mary-Corwin Hospital*, 221 F.3d 1160,1164 (10th Cir. 2000), and conclusory allegations are insufficient to establish an issue of fact which would defeat the motion. *Hall v. Bellmon*, 935 F.2d at 1109-1110. Additionally, in a summary judgment posture, the verified Complaint and the *Martinez* Report may be treated as affidavits. *Hall v. Bellmon*, 935 F.2d at 1111.

III.    *Exhaustion of Remedies*

Under 42 U.S.C. §1997e(a) of the Prisoner Litigation Reform Act of 1995 ("PLRA"), a prison inmate is required to complete the prison's administrative process before suing over prison conditions. *Booth v. Churner*, 532 U.S. 731, 733 (2001). "There is no question that exhaustion is mandatory under the PLRA" and that unexhausted claims cannot be brought in court. *Jones v. Bock,* 549 U.S. 199, 199-200 (2007) (internal citation omitted). Even where the available remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available. *See Booth v. Churner*, 532 U.S. at 740-741; *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). The PLRA's exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).; *see also Jernigan*, 304

F.3d at 1032. An inmate must do more than initiate the administrative grievance process; he must also complete it prior to filing suit. *Jernigan*, 304 F.3d at 1032.

In a suit governed by the PRLA, "[f]ailure to exhaust is an affirmative defense; a plaintiff is not required to plead or demonstrate exhaustion in the complaint." *Gallagher v. Shelton*, --- F.3d ----, 2009 WL 4047952 at *2 (10th Cir. 2009); *Jones v. Bock*, 549 U.S. 199, 216 (2007). Thus, the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras,* 484 F.3d 1236, 1241 (10th Cir. 2007). Defendants must prove: (1) administrative remedies were available to the plaintiff, and (2) the plaintiff failed to exhaust these remedies. *Purkey v. CCA Detention Center,* 263 Fed. Appx. 723, 726 (10th Cir. 2008).

IV.   *Affirmative Defense in Summary Judgment Posture*

When an affirmative defense is raised in a motion for summary judgment, the defendant must demonstrate that "no disputed material fact exists regarding the affirmative defense asserted." *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). "If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact." *Id.* "If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law." *Id.* "Material facts" are "facts which might affect the outcome of the suit under the governing law." *Id.*

## ANALYSIS

As a preliminary matter, the Court notes that Mr. Osborne's claims for declaratory and injunctive relief are now moot because he is no longer confined at New Mexico Corrections Department,[5] where the alleged violations occurred. *Cf. Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997) (holding prisoner's release mooted his claims seeking declaratory and injunctive relief as to conditions of confinement).

Moving on to Mr. Osborne's claims for monetary relief and construing them liberally, he appears to make two separate claims: (1) Defendants negligently permitted unsafe working conditions to exist in the CID which caused injury to Mr. Osborne's fingers; and (2) when Mr. Osborne returned to work at the CID after suffering his injury, Defendants had failed to rectify the unsafe working conditions which created a substantial risk of serious harm.

As outlined above, Defendants have raised the affirmative defense that Mr. Osborne failed to exhaust his administrative remedies under the PLRA with regard to his alleged claims. *See Docs. 15 & 17.* In support of this contention, Defendants have submitted a *Martinez* Report which contains two affidavits from prison personnel related to Mr. Osborne's failure to exhaust remedies. The first is from Jose Armendariz, the grievance officer at SNMCF. *See Doc. 17*, Exhibit 18 at ¶ 1. Mr. Armendariz has occupied the role of

---

[5] *See Doc. 14.*

grievance officer since September of 2007 which covers the entire relevant time period. *Id.* Through his position, Mr. Armendariz has the authority to resolve inmate formal grievances. *Id.* at ¶ 7. The second affidavit is from Dr. Stephen Vaughn who is employed by the New Mexico Corrections Department ("NMCD")[6] as the Health Service Bureau Chief. *Doc. 17*, Exhibit 23 at ¶ 1. In his capacity as Health Service Bureau Chief, Dr. Vaughn has access to all inmate's medical files and charts. *Id.* at ¶ 14.

I.      *Mr. Armendariz' Affidavit*

In his sworn affidavit, Mr. Armendariz outlines NMCD'S policy regarding inmate grievances. An inmate who feels aggrieved must first submit an informal grievance. *Id.* at ¶ 4. If the inmate is not satisfied with the resolution of the informal grievance, then the inmate may pursue a formal grievance. *Id.* At SNMCF, an inmate must file an informal grievance first through the facility's security or program manager before a formal grievance is accepted through Mr. Armendariz's office. *Id.* at ¶ 5.

If an inmate is dissatisfied with the way that the grievance officer resolves the grievance, then the inmate may submit a grievance to the Warden of the facility. *Id.* at ¶ 8. If an inmate is dissatisfied with the way the Warden resolves the grievance, then the inmate may submit an appeal of that disposition to the appointed Cabinet Secretary. *Id.* at ¶ 9. The decision of the appointed Cabinet Secretary, with respect to an inmate appeal,

---

[6] NMCD is the state agency that oversees various correctional facilities in New Mexico including SNMCD. *See* http://corrections.state.nm.us/prisons/publicinst.html.

is final. *Id.* at ¶ 10.

Mr. Armendariz states that he recalls speaking with Mr. Osborne in January of 2009, regarding the incidents related to this lawsuit. *Id.* at ¶ 11. Mr. Armendariz maintains that he told Mr. Osborne that he needed to file an informal grievance before he could file a formal one. *Id.* He additionally instructed Mr. Osborne that if he was not satisfied with the resolution of the informal grievance, he could file a formal grievance with his office. *Id.* Lastly, Mr. Armendariz swears that he never received a formal grievance from Mr. Osborne regarding the incident at CID. *Id.* at ¶ 12.

II.     *Dr. Vaughn's Affidavit*

In his sworn affidavit, Dr. Vaughn states that if an inmate has a complaint regarding his medical treatment, NMCD permits the inmate to either complain directly to an NMCD medical staff, or the inmate may pursue the complaint through the informal and then formal grievance procedure, as described above. *Id.* at ¶ 15. Dr. Vaughn also explains that there are certain situations where an inmate may make a complaint to a medical staff personnel, which would be documented and carried in the inmate's medical file, yet the prison's assigned grievance officer might never know about the complaint because it was never pursued at the informal or formal grievance level. *Id.* Dr. Vaughn further asserts that he has reviewed Mr. Osborne's medical file, and there is no evidence of any complaint ever made by Mr. Osborne contained therein. *Id.* at ¶ 17 & 22.

III.    *No Genuine Issue as to any Material Fact*

Based on this uncontroverted evidence, the Court finds that Defendants have established that administrative remedies were available to Mr. Osborne, and that he failed to exhaust his administrative remedies available through the facility's grievance process. Defendants have therefore met their initial burden of demonstrating that no disputed material fact exists regarding their affirmative defense of failure to exhaust. Accordingly, Mr. Osborne must "demonstrate with specificity the existence of a disputed material fact." *Hutchison*, 105 F.3d. at 564. As noted above, Mr. Osborne did not respond to the *Martinez* report or the Motion to Dismiss. Only in his Complaint does Mr. Osborne address the issue of exhaustion of administrative remedies. *See Hall*, 935 F.2d at 1111 (in a summary judgment posture, the verified Complaint may be treated as an affidavit).

In his Complaint, Mr. Osborne asserts the following regarding exhaustion:

> Plaintiff Jerry Osborne used the prisoner grievance procedure available at SNMCF/POU to try and solve the problem. On January 23, 2009 and [sic] Plaintiff Jerry Osborne presented the facts relating to this complaint. And till [sic] this date Feb 15, 2009 the grievance was not answered and left plaintiff with only one alternative and that was to file the complaint and suite [sic] concerning my injuries that could have been avoided if the department in prison industries would have taken all precautionary measures to insure an accident free environment after another inmate had cut his finger off on the same type of table. And therefore I can only assume that my grievance was thrown away or just plain ignored.

*Doc. 1* at 4. Mr. Osborne has the following cite after this paragraph: "See Informal

Complaint dated 1-23-09."[7]

When determining whether this factual claim raises a genuine issue of material fact, it is important to recall the uncontroverted grievance procedure available to a SNMCF prisoner. Mr. Armendariz' affidavit establishes that filing an informal complaint is the first step in the grievance process at SNMCF. If a prisoner is unhappy with the result of the informal complaint, he must then file a formal grievance with Mr. Armendariz. Then, if he still has not received sufficient relief, he can file a grievance with the Warden of SNMCF, and finally an appeal of that grievance to the appointed Cabinet Secretary. *See p. 8-9, supra.*

While there may be a genuine factual dispute about whether Mr. Osborne filed an informal complaint, there is no doubt that he failed to file a formal grievance or complete the appeal process. This conclusion is based on the following: (1) Mr. Armendariz' affidavit that he did not receive a formal grievance filing from Mr. Osborne; (2) Mr. Osborne has not refuted this contention; (3) Mr. Osborne himself refers to the only grievance he filed as an "Informal Complaint;" and (4) Mr. Osborne filed the instant lawsuit on February 27, 2009, which is only 35 days after he claims to have filed an informal complaint -- it is simply impossible that Mr. Osborne followed the entire grievance procedure in those 35 days.

---

[7] Mr. Osborne did not to supply the Court with a copy of that alleged complaint.

Given the genuine factual dispute about whether Mr. Osborne filed an informal complaint, the Court must assume that he did. However, that factual dispute is not a <u>material</u> one, because a prisoner must do more than complete the first step in the grievance process to "exhaust his administrative remedies." The Tenth Circuit has made clear that, "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan*, 304 F.3d at 1032. In *Jernigan*, the plaintiff asserted that he submitted a grievance, but that it had been lost or misfiled. *Id*. When the plaintiff did not receive a response to his grievance, he sought to appeal the grievance to the Director of the Correctional Facility. *Id*. The Director rejected the appeal because there was no response from the warden and told the plaintiff he had ten days to cure that deficiency. *Id.* Instead of attempting to cure, the plaintiff filed suit. *Id.* The Tenth Circuit held that, under those facts, the plaintiff had failed to utilize all steps of the grievance process. *Id.* at 1032-33. Consequently, he failed to exhaust his remedies under the PLRA and his claim was barred. *Id.*

Under *Jernigan*, Mr. Osborne's filing of only an informal grievance does not constitute exhausting his administrative remedies. Because there is no genuine factual dispute about whether Mr. Osborne did anything beyond filing the informal complaint, there is no genuine issue of material fact that Mr. Osborne failed to

12

exhaust his administrative remedies. Accordingly, his suit should be dismissed without prejudice.

## **CONCLUSION**

Since prisoners are required to do more than initiate the administrative grievance process - they are required to actually complete it prior to filing suit - the uncontroverted evidence shows that Mr. Osborne failed to exhaust the administrative remedies that were available to him. Thus, summary judgment should be granted on the ground that Mr. Osborne failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).

Wherefore,

**IT IS HEREBY RECOMMENDED** that all claims for declaratory and injunctive relief against Defendants are now **MOOT** and should be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Defendants' *Martinez* Report (*Doc. 17*) and Defendants' Motion to Dismiss (*Doc. 18*) be treated as a motion for summary judgment with respect to Mr. Osborne's remaining claims and be **GRANTED** for failure to exhaust administrative remedies and those claims should be **DISMISSED WITHOUT PREJUDICE**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE